### UNITED STATES v. JAHN et al.

(Circuit Court of Appeals, Second Circuit. January 9, 1895.)

CUSTOMHOUSE CHARGES—FEES FOR WEIGHING AND GAUGING.

The charges for weighing and gauging merchandise, entered for export, originally provided by Acts Cong. July 26, 1866, and March 2, 1867, and afterwards embodied in sections 3023, 3024, Rev. St. U. S., were fees, and, as such, were abrogated by section 22 of the customs administrative act of June 10, 1890.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Gustave A. Jahn & Co., on August 15, 1890, imported into the port of New York a quantity of molasses, which, later in the month, they withdrew from warehouse, and exported to the port of Montreal. Upon such withdrawal and exportation, a charge of 10 cents per cask was exacted by the collector for gauging the molasses, under the provisions of section 3023, Rev. St. U. S. The importers paid the charge under protest, and their protest was referred to the board of general appraisers, who sustained the decision of the collector. The importers then applied to the circuit court for a review of the decision of the board of general appraisers, and that court reversed their decision, Wheeler, J., filing (Jan. 7, 1892) the following opinion:

"In the matter of this appeal of Gustave A. Jahn, as to the charge of so much per hundred pounds for weighers' services on goods entered for exportation. The appeal is against the allowance of those charges, on the ground that by the act of 1883 they were abolished. Now, the first time that any charge was made on that account for any goods entered for exportation was in the act of 1866 (14 Stat. 289). That was an act by itself, consisting of three sections, the first of which is: 'That upon all weighable articles hereafter exported, upon which a drawback or returned duty is allowed, and upon all weighable goods withdrawn from bonded warehouse for export, there shall be levied and collected, by the collectors of the several ports, three cents per hundred pounds, to be determined by the returns of the weighers.' And by section 2: 'That the office of measurer at the port of New York is hereby abolished, and the duties heretofore performed by them shall be performed by the weighers.' And section 3 is: 'That the weighers at the port of New York shall receive from and after the passage of this act, an annual salary of twenty-five hundred dollars: provided, that the increase of compensation, over and above the present salary of said officers, shall not exceed in any fiscal year, the amount of fees earned by them.'

"Now, this charge is connected right in there under the term 'fees.' The charge is a fee for a weigher, provided for by this act for the first time. Now, as to the gaugers, a similar thing is provided by the act of 1867 (14 Stat. 470) in the tariff act at large, section 3: 'That upon all merchandise gaugeable by law hereafter exported, upon which drawback or return duty is allowed, and upon all goods gaugeable by law, withdrawn from bonded warehouses for export, there shall be levied and collected by the collectors, of the several ports, ten cents per cask.' Then section 4: 'That the gaugers at the port of New York shall receive, from and after the first day of April, eighteen hundred and sixty-seven, an annual salary of two thousand dollars:

provided, that the amount of compensation of said officers, as hereby established, shall not exceed in any fiscal year the amount of fees earned by them.' Thus the charges of gaugers on exportations are put in here for the first time, and are called 'fees.'

"Now, these two sections (section 1 of the act of 1866, and section 3 of the act of 1867) are brought forward into the Revised Statutes in sections 3023 and 3024, exactly as they were enacted then. The other sections have become useless, so they are not brought forward into the statutes. But when these laws were passed these were fees. The dropping out of those sections does not change them at all, although the word 'fees' is lost out by the revision of the statutes into the Revised Statutes. The only question is whether they are fees now. Well, they are a specific charge for a specific thing, not relating to the actual worth of the things done, as for a quantum meruit. But, whether worth so much or not, they are to have so much a hundred pounds for weighing, and so much a cask for gauging, and that is essentially a thing that comes under the name of 'fees,' although in this statute it is not called a 'fee.'

"Now, the act of 1890 (section 22) provides 'that all fees exacted and oaths administered by officers of the customs, except as provided in this act, under or by virtue of existing laws of the United States, upon the entry of imported goods and the passing thereof through the customs, and also upon all entries of domestic goods, wares, and merchandise for exportations, be, and the same are hereby abolished.' The point here is whether that abolishes these fees. Now, it is argued that these are not included, because they are not called 'fees' in the statute. But the point is not whether they are called 'fees' in the statutes. The point is whether they are fees within the meaning of this act,—this section 22 of the act of 1890. Now, congress did not content itself by abolishing the particular sections of the law relating to fees, and leaving the rest as it was; but they declared emphatically that all fees exacted by customs officers in passing goods through the customhouse, or passing them through the other way, shall be abolished; that is, the whole thing was cut up by the roots, so that the goods passed through without any charge for fees. Here was a thing exacted. The collector of the port exacted three cents on a hundred pounds of sugar entered by these appellants for exportation. The appraisers held that those two sections of the Revised Statutes were not repealed, so far as this was concerned. But I think congress meant to repeal that, and cut it all out, and leave the goods free, so that there should be nothing in the nature of fees charged or exacted by an officer in passing goods through the customhouse, either way, and that the appellants were entitled to have this sugar go through without this charge. Therefore I decide that this charge, as a charge or fees, was improperly made. I have looked into the case of Obcrteuffer v. Robertson, 116 U. S. 499, 6 Sup. Ct. 462, as to charges. In that case all charges were abolished, just as in this case all fees were abolished. There they said all charges were cut right out, no matter where expressed in the statute; after that they were gone. The decision of the appraisers is reversed."

The government now appeals.

Edward Mitchell, U. S. Atty. (Chas. Duane Baker, Asst. U. S. Atty., of counsel), for the United States.

Stanley, Clarke & Smith (Edwin B. Smith, of counsel), for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. August 15, 1890, the appellees imported at the port of New York certain molasses, which later in the month they withdrew, and exported for drawback to Montreal, Canada. Before they were allowed the privilege, the collector compelled them to pay certain charges for weighing and gauging the molasses upon their exportation entry, against which they protested. The board of general appraisers sustained the action of the collector, and their

decision was reversed by the circuit court. From the decision of the circuit court the government took the present appeal. The question raised by the appeal is whether these charges were "fees," and as such abrogated by section 22 of the act of June 10, 1890, known as the "Customs Administrative Act," which provides as follows:

"That all fees exacted and oaths administered by officers of the customs except as provided in this act under or by virtue of the existing laws of the United States, upon the entry of imported goods and the passing thereof through the customs, and also upon the entry of domestic goods, wares and merchandise for exportation, be and the same are hereby abolished: ⁂ provided that where such fees under existing laws constitute in whole or in part the compensation of any officer, such officer shall receive from and after the passage of this act a fixed sum for each year equal to the amount which he would have been entitled to have received as fees for such services during said year."

Such charges as those in controversy for weighing were first authorized by the act of July 26, 1866, and by that act they were treated and denominated as "fees" in section 3, which permitted weighers to receive "the amount of fees" earned by them over and above the fixed salary of those officers. By the act of March 2, 1867, charges for gauging were allowed, and by that act charges like those in controversy for gauging were treated and denominated as "fees," by a provision similar to that in the act in respect to weighers. The provisions in these two acts were embodied in Rev. St. §§ 3023, 3024, so far as they allow compensation and fix the amount. But in the meantime, by subsequent legislation, the sections fixing the salary of weighers and gaugers had become inapplicable, and they were therefore omitted in the Revision, and the word "fees" dropped out of the statutes. We agree with Judge Wheeler, who decided the case in the circuit court, that the omission in the Revised Statutes to denominate these charges as "fees" is of no significance. Inasmuch as the charges were in their inception treated and denominated by statute as "fees," and as they were "fees" in the ordinary definition of the word, being a recompense prescribed by law for official services, we cannot doubt that they were intended to be included in the category of fees which were abolished by congress by the customs administrative act. Furthermore, it appears that, by the construction of the officers of the treasury department, down to the time of the passage of the customs administrative act, such exactions were uniformly regarded as fees. If the questions were doubtful, this construction would be persuasive, and, as has often been declared by the courts in cases of doubt or ambiguity, should turn the scale. The decision of the circuit court is affirmed.